1   **UNITED STATES DISTRICT COURT**
    **WESTERN DISTRICT OF NEW YORK**

2

3

4   UNITED STATES OF AMERICA,        )
                                     ) Case No. 1:18-CR-00167
5                                    )              (RJA)(HKS)
                    Plaintiff,       )
6                                    )
    vs.                              ) August 8th, 2019
7                                    )
    BENJAMIN ASHER HANDLEY,          )
8                                    )
                    Defendant.       )
9

10                    **TRANSCRIPT OF PLEA**
11        **BEFORE THE HONORABLE RICHARD J. ARCARA**
            **SENIOR UNITED STATES DISTRICT JUDGE**
12

13
    <u>APPEARANCES:</u>
14
    For the Plaintiff:    JAMES P. KENNEDY, JR., ESQ.
15                        UNITED STATES ATTORNEY
                          BY:  WEI XIANG, ESQ.
16                        ASSISTANT UNITED STATES ATTORNEY
                          138 Delaware Avenue
17                        Buffalo, NY 14202

18  For the Defendant:    FEDERAL PUBLIC DEFENDERS OFFICE
                          BY:  MARY BETH COVERT, ESQ.
19                        300 Pearl Street, Suite 200
                          Buffalo, NY 14202
20
    Court Reporter:       MEGAN E. PELKA, RPR
21                        Robert H. Jackson Courthouse
                          2 Niagara Square
22                        Buffalo, NY 14202

23

24

25

08:55AM 1          THE CLERK:  Criminal action 2018-167A.  United States

08:55AM 2    vs. Benjamin Asher Handley.  Plea.  Counsel, please state your

08:55AM 3    name and the party you represent for the record.

08:55AM 4          MR. XIANG:  Good morning, Your Honor.  Wei Xiang for

08:55AM 5    the government.

08:55AM 6          MS. COVERT:  Good morning, Your Honor.  Mary Beth

08:55AM 7    Covert for Benjamin Asher Handley and he's present here,

08:55AM 8    Judge, today.

08:55AM 9          THE COURT:  Good morning.

08:55AM 10         MR. XIANG:  Judge, we have a written plea agreement

08:55AM 11   to Count 3 of the indictment.  I have signed it.  I don't know

08:55AM 12   if the defense has it or has passed it up.

08:55AM 13         MS. COVERT:  Oh, I'm sorry, Judge.  We had already

08:56AM 14   signed it.  It's right here.

08:56AM 15         THE COURT:  That's your understanding, Ms. Covert?

08:56AM 16         MS. COVERT:  Yes, Your Honor.

08:56AM 17         THE COURT:  Would you administer the oath to

08:56AM 18   Mr. Handley?

08:56AM 19   (The defendant was sworn at 8:56 a.m.)

08:56AM 20         THE COURT:  Sir, you are now under oath.  And being

08:56AM 21   under oath during the course of these proceedings, I'll be

08:56AM 22   asking you some questions.  You'll have to answer those

08:56AM 23   questions honestly and truthfully.  If you were to give me any

08:56AM 24   false answer, that false answer may be used against you in a

08:56AM 25   further prosecution brought by the government on a charge of

08:56AM  1  perjury or making a false statement while under oath.  Do you

08:56AM  2  understand that, sir?

08:56AM  3         THE DEFENDANT:  Yes, Your Honor.

08:56AM  4         THE COURT:  It is also very important that you

08:56AM  5  understand what your rights are.  If at any time during the

08:56AM  6  course of these proceedings there's something you don't

08:56AM  7  understand, you want to ask me a question, you want to consult

08:56AM  8  with your attorney, you want something more fully explained to

08:56AM  9  you, you're free to do so.  You're encouraged to do so.  It's

08:57AM 10  not important that we get this over with as quickly as

08:57AM 11  possible.  What's important is that I'm satisfied that you

08:57AM 12  fully understand what your rights are.  Do you understand

08:57AM 13  that?

08:57AM 14         THE DEFENDANT:  Yes, Your Honor.

08:57AM 15         THE COURT:  Now, it is my understanding you're here

08:57AM 16  today to waive certain rights and to plead guilty to Count 3

08:57AM 17  of the indictment under the terms and conditions of the plea

08:57AM 18  agreement.  Do you understand this charge?

08:57AM 19         THE DEFENDANT:  Yes, I do.

08:57AM 20         THE COURT:  Ms. Covert, you have gone over Count 3

08:57AM 21  with your client.  Are you satisfied he understands it?

08:57AM 22         MS. COVERT:  Yes, Your Honor.

08:57AM 23         THE COURT:  Any reason that we need to go through any

08:57AM 24  further explanation?

08:57AM 25         MS. COVERT:  No, Your Honor.

08:57AM 1    THE COURT:  And you have reviewed with him the terms

08:57AM 2 and conditions of the plea agreement and he understands them?

08:57AM 3    MS. COVERT:  Yes, Judge.

08:57AM 4    THE COURT:  And you explained to him his rights under

08:57AM 5 Rule 11, right to a trial, right to a jury trial, right to an

08:57AM 6 attorney, et cetera?

08:57AM 7    MS. COVERT:  Yes, Your Honor.

08:57AM 8    THE COURT:  Now, sir, you have discussed this whole

08:57AM 9 matter with your attorney.  She's explained to you what your

08:57AM 10 legal rights are, what your legal options are.  You probably

08:57AM 11 didn't like to hear what she had to tell you, but she's not

08:57AM 12 here to make you feel good.  She's here to be your attorney.

08:57AM 13    And apparently, based on those discussions, you're

08:57AM 14 here to waive certain rights and to plead guilty to Count 3,

08:57AM 15 under the terms and conditions of the plea agreement.  Are you

08:58AM 16 fully satisfied with the advice and counsel you received from

08:58AM 17 your lawyer in this matter?

08:58AM 18    THE DEFENDANT:  Yes, Your Honor.

08:58AM 19    THE COURT:  Any complaints?

08:58AM 20    THE DEFENDANT:  No complaints.

08:58AM 21    THE COURT:  All right.  Let's proceed with the plea

08:58AM 22 agreement.

08:58AM 23    MR. XIANG:  The defendant, Benjamin Asher Handley and

08:58AM 24 the United States Attorney for the Western District of

08:58AM 25 New York, hereinafter the government, hereby enter into a plea

08:58AM  1  agreement with the terms and conditions as set out below.

08:58AM  2      The defendant agrees to plead guilty to Count 3 of

08:58AM  3  the indictment, which charges a violation of Title 26,

08:58AM  4  United States Code, Section 5861(j), unlawful transport of a

08:58AM  5  firearm, for which the maximum possible sentence is a term of

08:58AM  6  imprisonment of 10 years, a fine of $250,000, a mandatory $100

08:58AM  7  special assessment and a term of supervised release of three

08:58AM  8  years.  The defendant understands that the penalties set forth

08:58AM  9  in this paragraph are the maximum penalties that can be

08:58AM  10  imposed by the Court at sentencing.

08:58AM  11      THE COURT:  Do you understand that, sir?

08:58AM  12      THE DEFENDANT:  Yes, Your Honor.

08:58AM  13      THE COURT:  Did you explain to him the importance of

08:59AM  14  this paragraph?

08:59AM  15      MS. COVERT:  Yes, Your Honor.  I have.

08:59AM  16      THE COURT:  What is the importance of the paragraph?

08:59AM  17      MR. XIANG:  This paragraph satisfies the requirements

08:59AM  18  of Rule 11 of the Federal Rules of Criminal Procedure by

08:59AM  19  notifying the defendant of the maximum penalty.  The Court

08:59AM  20  also must consider, but is not bound by, the Federal

08:59AM  21  Sentencing Guidelines.

08:59AM  22      The sentencing guidelines went into effect on

08:59AM  23  November 1st, 1987 and are relevant to federal offenses

08:59AM  24  committed after that date.  The purpose of the sentencing

08:59AM  25  guidelines is to establish a sentencing system in which Courts

08:59AM 1 will impose similar sentences for similar crimes upon

08:59AM 2 defendants who are similar in ways that, according to the

08:59AM 3 guidelines, are relevant to sentencing. If the sentencing

08:59AM 4 guidelines procedure is followed, the Court would impose a

08:59AM 5 sentence within a range on a sentencing table in the

08:59AM 6 sentencing guidelines manual. This range would depend on the

08:59AM 7 defendant's criminal conduct and the defendant's criminal

08:59AM 8 history.

08:59AM 9 The law requires the Court to consider imposing the

08:59AM 10 sentence in accordance with the sentencing guidelines

08:59AM 11 procedure. The law permits the Court, however, to impose a

09:00AM 12 reasonable sentence without adhering to the sentencing

09:00AM 13 guidelines. If the Court decides to impose a sentence other

09:00AM 14 than the one prescribed by the sentencing guidelines, the

09:00AM 15 Court must state its reasons for doing so.

09:00AM 16 THE COURT: Do you understand that, sir?

09:00AM 17 THE DEFENDANT: Yes, sir.

09:00AM 18 THE COURT: We're going to go through the guidelines

09:00AM 19 in a few minutes. And I know your lawyer has spent a lot of

09:00AM 20 time explaining them to you. If you have any questions, let

09:00AM 21 me know. Otherwise, I'll assume you understand it, okay?

09:00AM 22 THE DEFENDANT: Understood.

09:00AM 23 THE COURT: All right.

09:00AM 24 MR. XIANG: The defendant understands that if it's

09:00AM 25 determined that the defendant has violated any of the terms or

09:00AM 1 conditions of supervised release, the defendant may be

09:00AM 2 required to serve in prison all or part of the term of

09:00AM 3 supervised release up to two years, without credit for time

09:00AM 4 previously served on supervised release.

09:00AM 5 As a consequence, in the event the defendant is

09:00AM 6 sentenced to the maximum term of incarceration, a prison term

09:00AM 7 imposed for a violation of supervised release may result in

09:00AM 8 the defendant serving a sentence of imprisonment longer than

09:00AM 9 the statutory maximum set forth in paragraph 1 of this

09:01AM 10 agreement.

09:01AM 11 THE COURT: Do you understand that, sir?

09:01AM 12 THE DEFENDANT: Yes, Your Honor.

09:01AM 13 MR. XIANG: The defendant understands the nature of

09:01AM 14 the offense set forth in paragraph 1 of this agreement and

09:01AM 15 understands that if this case proceeded to trial, the

09:01AM 16 government would be required to prove beyond a reasonable

09:01AM 17 doubt the following elements of the crime: That the defendant

09:01AM 18 knowingly transported or delivered a firearm in interstate

09:01AM 19 commerce. This firearm was a machine gun. The defendant knew

09:01AM 20 the characteristic of this firearm, that is, that it was a

09:01AM 21 machine gun. And this firearm was not registered, as

09:01AM 22 required, in the National Firearms Registration and Transfer

09:01AM 23 Record.

09:01AM 24 THE COURT: Do you understand that, sir?

09:01AM 25 THE DEFENDANT: Yes, Your Honor.

09:01AM 1          THE COURT:  Okay.

09:01AM 2          MR. XIANG:  The defendant and the government agree to

09:01AM 3   the following facts which form the basis for the entry of the

09:01AM 4   plea, including relevant conduct.

09:01AM 5          On or about January 18th, 2018, the defendant,

09:01AM 6   Benjamin Asher Handley, using the email handle Abraham_4.69,

09:02AM 7   sent an email to an undercover agent of the U.S. Department of

09:02AM 8   Homeland Security, Homeland Security Investigations, referred

09:02AM 9   to as an UCA.  The defendant offered to sell fully automatic

09:02AM 10  pistols to the UCA.  After some negotiation, the UCA agreed to

09:02AM 11  buy an automatic Glock 17 pistol from the defendant for $1,000

09:02AM 12  in cash.

09:02AM 13         On or about February 6th, 2018, the UCA told the

09:02AM 14  defendant, "I think I have a U.K. buyer for that Glock.  I

09:02AM 15  told him it might be two to three weeks.  Think that timeline

09:02AM 16  is realistic?"  In the following weeks, the defendant shipped

09:02AM 17  three parcels from the State of Alaska to an address provided

09:02AM 18  by the UCA in the Western District of New York.  Split among

09:02AM 19  the parcels were all the parts for a Glock 17 pistol with

09:02AM 20  obliterated serial numbers and an additional modified back

09:02AM 21  plate.

09:03AM 22         The defendant emailed the UCA with instructions on

09:03AM 23  assembling the modified back plate.  Assembling the Glock

09:03AM 24  yielded a fully automatic pistol.  The defendant subsequently

09:03AM 25  sold an additional 11 full automatic firearms with obliterated

09:03AM 1 serial numbers to the UCA, all shipped from the State of

09:03AM 2 Alaska for the Western District of New York.  None of these 12

09:03AM 3 firearms was registered, as required by Title 26, United

09:03AM 4 States Code, Section 5841 and the National Firearms

09:03AM 5 Registration and Transfer Record.

09:03AM 6         THE COURT:  How would you prove all that?

09:03AM 7         MR. XIANG:  Judge, we'll have five sets of evidence.

09:03AM 8 Since this was mainly a circumstantial evidence case, first

09:03AM 9 we'll have law enforcement agents.  They will testify to and

09:03AM 10 admit the emails that were exchanged here, mailings, both the

09:03AM 11 firearms and the photographs of the cash that was mailed to

09:03AM 12 the defendant, as well as a mailing by the defendant on one of

09:04AM 13 the transactions where he sent out a personal mail, along with

09:04AM 14 one of the gun packages, which revealed his real address.

09:04AM 15         Agents would also testify to test-firing they

09:04AM 16 conducted of some of these firearms, that they were, in fact,

09:04AM 17 automatic.  And then they also would testify to surveillance

09:04AM 18 they conducted on him on at least one of the transactions

09:04AM 19 where they followed him all the way from Homer to Anchorage

09:04AM 20 and into a post office where he dropped off the last parcel of

09:04AM 21 firearms that he was sending to us.

09:04AM 22         Next, we'll have experts.  They would testify to DNA

09:04AM 23 from some of these firearms.  On one of the Glocks, there was

09:04AM 24 a match of the DNA on the firearm to the defendant by a

09:04AM 25 statistic of 59.6 quadrillion.

09:05AM  1      Third, we have cell phone location evidence.  There's

09:05AM  2  historical cell site data that matched up the defendant's cell

09:05AM  3  phone to locations by post offices where some of these firearm

09:05AM  4  parcels were dropped off for mailing.  And that's across

09:05AM  5  the -- a large portion of the State of Alaska.  And we also

09:05AM  6  have ping records that also match them to some of the

09:05AM  7  transactions.

09:05AM  8      Fourth, we have sales records from licensed federal

09:05AM  9  firearm dealers of the same types of firearms that the

09:05AM  10  defendant sold to us he had purchased.  And they were shipped

09:05AM  11  to him by these FFLs and he had scrubbed the serial numbers so

09:05AM  12  it's -- can't be certain, but it's another circumstance in

09:05AM  13  terms of timeline and the type of firearms that he had in his

09:05AM  14  possession.

09:06AM  15      And fifth, after his arrest in the State of Alaska,

09:06AM  16  there was a search warrant that was obtained there and

09:06AM  17  executed on his laptop that he had on his person.  And on that

09:06AM  18  laptop there was a file that contained an email address and

09:06AM  19  the password for the emails that had been corresponding with

09:06AM  20  us, which I noted is the Abraham_4.69 email address.

09:06AM  21      THE COURT:  What caliber were these?  Was the guns?

09:06AM  22      MR. XIANG:  Judge, these were -- there was mostly

09:06AM  23  9-millimeters.  There was a .45 caliber.  That was in the

09:06AM  24  second transaction, but most of these were 9-millimeters.

09:06AM  25      THE COURT:  All right.  Do you understand all that,

09:06AM 1  sir?

09:06AM 2            THE DEFENDANT:  Yes, Your Honor.

09:06AM 3            THE COURT:  Okay.

09:06AM 4            MR. XIANG:  The defendant understands that the Court

09:07AM 5  must consider, but is not bound by the sentencing guidelines

09:07AM 6  of the Sentencing Reform Act of 1984.  The government and the

09:07AM 7  defendant agree that Guideline Section 2K2.1(a)(5) applies to

09:07AM 8  the offense of conviction and provides for a base offense

09:07AM 9  level of 18.

09:07AM 10           THE COURT:  Do you understand where that number came

09:07AM 11  from, sir?

09:07AM 12           THE DEFENDANT:  Yes, Your Honor.  I understand.

09:07AM 13           THE COURT:  You explained it to him?  You saw this

09:07AM 14  table with all these numbers on it?

09:07AM 15           THE DEFENDANT:  (The defendant nodded head.)

09:07AM 16           THE COURT:  It's important.  You're going to end up

09:07AM 17  somewhere on this chart.  Where you end up, that's a range of

09:07AM 18  months being recommended to the Court as to what the sentence

09:07AM 19  should be.  I'm not bound by it, but you want to be as high up

09:07AM 20  to the top of this table as you can and far away from the

09:07AM 21  bottom because as you go down that page, the numbers get

09:07AM 22  pretty high.

09:07AM 23           Now, for this particular violation, it's been

09:07AM 24  determined, as a starting point, that the number is number 18.

09:07AM 25  That means right about here on the chart.  Okay?  Right about

09:08AM 1    the middle of the page.  Now, we're going to make some

09:08AM 2    adjustments to fit your situation because every situation is

09:08AM 3    different.  Sometimes you may go up, sometimes you may go

09:08AM 4    down.  So, we're going to go through that in a few minutes,

09:08AM 5    but it's going to fit your situation, under these facts and

09:08AM 6    circumstances.  If you have any questions, you let me know,

09:08AM 7    all right?

09:08AM 8            THE DEFENDANT:  Yes, sir.

09:08AM 9            MR. XIANG:  The government and the defendant agree

09:08AM 10   that the following specific offense characteristics do apply;

09:08AM 11   the four-level increase, pursuant to Guideline Section

09:08AM 12   2K2.1(b)(1)(B), the offense involved 8 to 24 firearms.

09:08AM 13           THE COURT:  Do you understand that, sir?

09:08AM 14           THE DEFENDANT:  Yes, Your Honor.

09:08AM 15           THE COURT:  Okay.  Because there's so many -- the

09:08AM 16   number goes up four levels, which works to your disadvantage,

09:08AM 17   obviously.

09:08AM 18           MR. XIANG:  The four-level increase, pursuant to

09:08AM 19   Guideline Section 2K2.1(b)(4)(B), the firearms had obliterated

09:09AM 20   serial numbers and the four-level increase, pursuant to

09:09AM 21   Guideline Section 2K2.1(b)(5), the trafficking of firearms.

09:09AM 22   The government maintains that the following specific offense

09:09AM 23   conduct does apply; the four-level increase pursuant to

09:09AM 24   Guideline Section 2K2.1(b)(6)(A), transfer with reason to

09:09AM 25   believe firearms would transported out of the United States.

09:09AM 1  The defendant specifically reserves the right at the time of

09:09AM 2  sentencing to argue to the Court that this increase does not

09:09AM 3  apply.

09:09AM 4           THE COURT:  That would go from 34 to 31?

09:09AM 5           MS. COVERT:  Thirty.

09:09AM 6           MR. XIANG:  Thirty.  It's a four-level difference,

09:09AM 7  Judge.

09:09AM 8           THE COURT:  All right.  We're talking about -- this

09:09AM 9  is a different -- this is not under B and C.  This is a

09:09AM 10 different section, right, of 7B and C?  This is

09:10AM 11 2K2.1(b)(6)(A)?

09:10AM 12          MR. XIANG:  Correct.  So, this is in paragraph 8

09:10AM 13 here.

09:10AM 14          THE COURT:  Yeah.  This has nothing to do with

09:10AM 15 paragraph 7A and B.

09:10AM 16          MR. XIANG:  Correct.

09:10AM 17          THE COURT:  This is a difference.

09:10AM 18          MR. XIANG:  Correct.

09:10AM 19          THE COURT:  All right.  Go ahead.

09:10AM 20          MR. XIANG:  And so, based on the foregoing, it is the

09:10AM 21 understanding of the government and the defendant that the

09:10AM 22 adjusted offense level for the offense of conviction is 34, if

09:10AM 23 the government's calculations apply and 30 if the defendant's

09:10AM 24 calculations apply.

09:10AM 25          THE COURT:  What evidence do you have that it would

09:10AM 1 be transported out of the United States?

09:10AM 2 MR. XIANG: Judge, back in the factual basis,

09:10AM 3 paragraph 4B, before the defendant sent the gun, the Glock

09:10AM 4 that's the subject of this charge, Count 3, the UCA -- the

09:10AM 5 undercover agent had told them, I think I have a U.K. buyer

09:10AM 6 for that Glock. So, he had told them that the Glock that the

09:11AM 7 undercover agent -- that the defendant was sending to the

09:11AM 8 undercover agent, the undercover agent was planning on sending

09:11AM 9 to someone else in the United Kingdom.

09:11AM 10 So, that, the government believes, establishes at

09:11AM 11 least by a preponderance of the evidence that the defendant

09:11AM 12 sent his Glock to the undercover agent with reason to believe

09:11AM 13 that the Glock would be then sent out of the United States to

09:11AM 14 the U.K.

09:11AM 15 THE COURT: So, that was within the control of the

09:11AM 16 government?

09:11AM 17 MR. XIANG: Well, it was.

09:11AM 18 THE COURT: The government didn't have to say that,

09:11AM 19 but they said it.

09:11AM 20 MR. XIANG: Correct. And he sent it anyway.

09:11AM 21 THE COURT: Why did the government say that, so they

09:11AM 22 could get a four-level increase?

09:11AM 23 MR. XIANG: No, Judge. I'm not quite certain why

09:11AM 24 that was said at the time. I don't recall at this point.

09:11AM 25 THE COURT: Sounds like a little manipulation to me,

09:11AM 1 because the agent said I got someone outside of the United

09:11AM 2 States?  It doesn't sound like a very good argument to me.

09:11AM 3 Sounds like manipulation.  It's a four-level increase.  That's

09:11AM 4 is a substantial increase.  If the government didn't say that,

09:12AM 5 just I have a buyer, it would have been -- we wouldn't have

09:12AM 6 had it.  Do you agree or not agree with that?

09:12AM 7          MR. XIANG:  Right.  If we didn't say it.

09:12AM 8          THE COURT:  So, he said it.  So, it goes up four

09:12AM 9 levels?

09:12AM 10          MR. XIANG:  Well, he sent it to us anyway.  He didn't

09:12AM 11 have to send it.  He could have said, oh, if you're exporting

09:12AM 12 it, no.  I'm only selling intrastate or I'm only letting you

09:12AM 13 keep it in state.  You're telling me you're sending it to

09:12AM 14 another out of the country, I'm not going to sell it to you.

09:12AM 15 That may have worked with somebody else.

09:12AM 16          THE COURT:  In the real world, did it make any

09:12AM 17 difference?

09:12AM 18          MR. XIANG:  I guess it depends on his morals, but --

09:12AM 19          THE COURT:  Why would a defendant care whether it's

09:12AM 20 going to go to England or go to somebody in Texas?  That's all

09:12AM 21 he wants is the money, I guess.

09:12AM 22          MR. XIANG:  The Second Amendment -- you know, we

09:12AM 23 don't know at the time when his reason was.

09:12AM 24          THE COURT:  Well, we'll wait for the probation

09:12AM 25 officer.  And your argument is probably consistent with what

09:12AM    1    I'm saying?

09:12AM    2        MS. COVERT: Yes, Judge. You hit right on it. And I

09:12AM    3    will say that Mr. Handley didn't react to the email and say,

09:13AM    4    oh, good, I've been looking for an international buyer for

09:13AM    5    guns. He didn't say anything in response to that email and

09:13AM    6    wasn't seeking out international buyers.

09:13AM    7        The other thing, Judge, is there is some case law

09:13AM    8    that supports the notion that if the government is using that

09:13AM    9    kind of a comment for the sole purpose of getting an increase

09:13AM    10    under the guidelines, then it's not appropriate to apply it.

09:13AM    11    And so, that's what we would be arguing.

09:13AM    12        THE COURT: Well, 31 has a 108 to 135 range.

09:13AM    13        MS. COVERT: Correct.

09:13AM    14        THE COURT: And 34 has a 151 to 188. So, the

09:13AM    15    difference is a possible sentence of maybe 80 months, which is

09:13AM    16    an additional seven years because of what the agent said.

09:13AM    17        MS. COVERT: It's a big swing.

09:14AM    18        THE COURT: Well, we'll wait and see what the

09:14AM    19    probation officer says and what the justification is. It

09:14AM    20    better be better than what I heard today. Okay.

09:14AM    21        MR. XIANG: So, at sentencing, the government agrees

09:14AM    22    not to oppose the recommendation that the Court apply the two-

09:14AM    23    level downward adjustment of Guideline Section 3E1.1(a),

09:14AM    24    acceptance of responsibility and further agrees to move the

09:14AM    25    Court to apply the additional one-level downward adjustment of

09:14AM  1   Guideline Section 3E1.1(b), which would result in a total

09:14AM  2   offense level of 31 if the government's calculations apply and

09:14AM  3   27 if the defendant's calculations apply.

09:14AM  4        It is the understanding of the government and the

09:14AM  5   defendant that the defendant's criminal history category is I.

09:14AM  6   The defendant understands that if the defendant is sentenced

09:14AM  7   for or convicted of any other charges prior to sentencing in

09:14AM  8   this action, the defendant's criminal history category may

09:14AM  9   increase.  The defendant understands that the defendant has no

09:15AM  10  right to withdraw the plea of guilty based on the Court's

09:15AM  11  determination of the defendant's criminal history category.

09:15AM  12       THE COURT:  Now, the acceptance of responsibility

09:15AM  13  provision is there, if somebody is guilty and willing to

09:15AM  14  accept responsibility -- and by pleading guilty it's evidence

09:15AM  15  that you are -- you can get a three-level reduction, which is

09:15AM  16  substantial, if you look at the low end of the lower number

09:15AM  17  and the high end of the higher number.

09:15AM  18       The theory being, you save the government the time

09:15AM  19  and expense of a trial, you should get the lower end of the

09:15AM  20  sentence.  There's no guarantee you'll get the lower end, but

09:15AM  21  it gives you and your lawyer an argument to argue for a lower

09:15AM  22  sentence.  If you went to trial and you were convicted, in all

09:15AM  23  likelihood, you would not get this three-level reduction.  Do

09:15AM  24  you understand that?

09:15AM  25       THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 09:15AM | 1 | MR. XIANG: It is the understanding of the government |
| 09:15AM | 2 | and the defendant that if the Court determines that Guideline |
| 09:15AM | 3 | Section 2K2.1(b)(6)(A) does apply, with a total offense level |
| 09:15AM | 4 | of 31 and criminal history category of I and taking into |
| 09:15AM | 5 | account the statutory maximum penalties, the defendant's |
| 09:16AM | 6 | sentencing range will be a term of imprisonment of 108 to 120 |
| 09:16AM | 7 | months, a fine of 30,000 to $250,000 and a period of |
| 09:16AM | 8 | supervised release of one to three years. |
| 09:16AM | 9 | It is the understanding of the government and the |
| 09:16AM | 10 | defendant that if the Court determines that Guideline Section |
| 09:16AM | 11 | 2K2.1(b)(6)(A) does not apply, with a total offense level of |
| 09:16AM | 12 | 27 and criminal history category of I, the defendant's |
| 09:16AM | 13 | sentencing range will be a term of imprisonment of 77 to 87 |
| 09:16AM | 14 | months, a fine of 20,000 to $250,000 and a period of |
| 09:16AM | 15 | supervised release of one to three years. Notwithstanding |
| 09:16AM | 16 | this, the defendant understands that at sentencing, the |
| 09:16AM | 17 | defendant is subject to the maximum penalties set forth in |
| 09:16AM | 18 | paragraph 1 of this agreement. |
| 09:16AM | 19 | THE COURT: Do you understand that, sir? |
| 09:16AM | 20 | THE DEFENDANT: Yes, Your Honor. |
| 09:16AM | 21 | MR. XIANG: The government and the defendant agree to |
| 09:16AM | 22 | the correctness of the calculations of the sentencing |
| 09:16AM | 23 | guidelines range set forth above. The government and the |
| 09:16AM | 24 | defendant, however, reserve the right to recommend a sentence |
| 09:16AM | 25 | outside the sentencing guidelines range. This paragraph |

09:17AM 1 reserves the right to the government and the defendant to

09:17AM 2 bring to the attention of the Court all information deemed

09:17AM 3 relevant to a determination of the proper sentence in this

09:17AM 4 action.  The defendant understands that the Court is not bound

09:17AM 5 to accept any sentencing guidelines calculations set forth in

09:17AM 6 this agreement and the defendant would not be entitled to

09:17AM 7 withdraw the plea of guilty based on the sentence imposed by

09:17AM 8 the Court.

09:17AM 9          THE COURT:  Do you understand all this?

09:17AM 10          THE DEFENDANT:  Yes, Your Honor.

09:17AM 11          THE COURT:  Okay.

09:17AM 12          MR. XIANG:  Judge, next is Statute of Limitations.

09:17AM 13          THE COURT:  Any reason to read that?

09:17AM 14          MS. COVERT:  No need.

09:17AM 15          THE COURT:  And government's rights and reservations,

09:17AM 16 any reason to read that?

09:17AM 17          MS. COVERT:  No, Your Honor.

09:17AM 18          THE COURT:  I guess you should read the removal.

09:17AM 19          MR. XIANG:  The defendant represents that he is a

09:17AM 20 citizen of the United States.  However, if the defendant is

09:17AM 21 not a citizen of the United States, the defendant understands

09:17AM 22 that if convicted, the defendant may be removed from the

09:17AM 23 United States, denied citizenship and denied admission to the

09:17AM 24 United States in the future.

09:17AM 25          Appeal rights.  The defendant understands that

09:17AM 1 Title 18, United States Code, Section 3742 affords the

09:18AM 2 defendant a limited right to appeal the sentence imposed.  The

09:18AM 3 defendant, however, knowingly waives the right to appeal and

09:18AM 4 collaterally attack any component of a sentence imposed by the

09:18AM 5 Court which falls within or is less than the sentencing range

09:18AM 6 for imprisonment, a fine and supervised release set forth in

09:18AM 7 section 3 of paragraph 12A above, notwithstanding the manner

09:18AM 8 in which the Court determines the sentence.

09:18AM 9 In the event of an appeal of the defendant's sentence

09:18AM 10 by the government, the defendant reserves the right to argue

09:18AM 11 the correctness of the defendant's sentence.  The defendant

09:18AM 12 understands that by agreeing not to collaterally attack the

09:18AM 13 sentence, the defendant is waiving the right to challenge the

09:18AM 14 sentence in the event that in the future the defendant becomes

09:18AM 15 aware of previously unknown facts or a change in the law which

09:18AM 16 the defendant believes would justify a decrease in the

09:18AM 17 defendant's sentence.

09:18AM 18 The government waives its right to appeal any

09:18AM 19 component of a sentence imposed by the Court which falls

09:18AM 20 within or is greater than the sentencing range for

09:18AM 21 imprisonment, a fine and supervised release set forth in

09:19AM 22 section 3, paragraph 12B above, notwithstanding the manner in

09:19AM 23 which the Court determines the sentence.  However, in the

09:19AM 24 event of an appeal of the defendant's sentence by the

09:19AM 25 defendant, the government reserves its right to argue the

09:19AM  1   correctness of the defendant's sentence.

09:19AM  2           This plea agreement represents the total agreement

09:19AM  3   between the defendant, Benjamin Asher Handley and the

09:19AM  4   government.  There are no promises made by anyone, other than

09:19AM  5   those contained in this agreement.  This agreement supersedes

09:19AM  6   any other prior agreements, written or oral, entered into

09:19AM  7   between the government and the defendant.  It's signed by

09:19AM  8   myself, dated today.

09:19AM  9           I, Benjamin Asher Handley, have read this agreement,

09:19AM 10   which consists of pages 1 through 9.  I have had a full

09:19AM 11   opportunity to discuss this agreement with my attorney,

09:19AM 12   Assistant Federal Public Defender Mary Beth Covert.  I agree

09:19AM 13   that it represents the total agreement reached between myself

09:19AM 14   and the government.  No promises or representations have been

09:20AM 15   made to me, other than what is contained in this agreement.  I

09:20AM 16   understand all of the consequences of my plea of guilty.  I

09:20AM 17   fully agree with the contents of this agreement.  I have

09:20AM 18   signed this agreement voluntarily and of my own free will.

09:20AM 19   Signed by the defendant and his counsel today.

09:20AM 20           THE COURT:  Now, sir, we've gone over the agreement

09:20AM 21   in court.  You indicated you understand it.  Your attorney

09:20AM 22   says she's gone over it with you.  She's satisfied you

09:20AM 23   understand it.  You signed it indicating you understand it.

09:20AM 24   Any questions, sir?

09:20AM 25           THE DEFENDANT:  No, Your Honor.

09:20AM  1          THE COURT:  Are these all the terms and conditions of

09:20AM  2  the plea agreement which we just read here in court?

09:20AM  3          THE DEFENDANT:  I'm sorry?  Could you --

09:20AM  4          THE COURT:  Are these all the terms and conditions of

09:20AM  5  the agreement?

09:20AM  6          THE DEFENDANT:  Yes, Your Honor.

09:20AM  7          THE COURT:  Has anyone made any other promises to

09:20AM  8  you?

09:20AM  9          THE DEFENDANT:  No other offers or promises.

09:20AM  10          THE COURT:  How old are you, sir?

09:20AM  11          THE DEFENDANT:  Twenty-six years old.

09:20AM  12          THE COURT:  Where were you born and raised?

09:20AM  13          THE DEFENDANT:  I was born in Soldotna, raised in

09:20AM  14  Homer, Alaska.

09:20AM  15          THE COURT:  Would you say that again?

09:20AM  16          THE DEFENDANT:  I was raised in Homer, Alaska.

09:20AM  17  H-O-M-E-R.

09:20AM  18          MS. COVERT:  He was born in Alaska.

09:20AM  19          THE DEFENDANT:  I was born there as well.  Yes, Your

09:20AM  20  Honor.

09:20AM  21          THE COURT:  All right.  What's the extent of your

09:21AM  22  education?

09:21AM  23          THE DEFENDANT:  Graduated high school, some college.

09:21AM  24          THE COURT:  Where did you go to college?

09:21AM  25          THE DEFENDANT:  At the Kenai Peninsula Campus,

09:21AM  1  pursuing a certificate in welding.

09:21AM  2          THE COURT:  Why didn't you finish your college

09:21AM  3  education?

09:21AM  4          THE DEFENDANT:  I was only pursuing an education and

09:21AM  5  training in welding for --

09:21AM  6          THE COURT:  In what?

09:21AM  7          THE DEFENDANT:  In commercial welding.

09:21AM  8          THE COURT:  Whaling?

09:21AM  9          THE DEFENDANT:  Welding.  Industrial.  Like iron

09:21AM  10  working.

09:21AM  11          THE COURT:  Welding?

09:21AM  12          THE DEFENDANT:  Yes, sir.

09:21AM  13          THE COURT:  Welding things together?

09:21AM  14          THE DEFENDANT:  Yes, sir.

09:21AM  15          THE COURT:  Okay.  Are you married?

09:21AM  16          THE DEFENDANT:  No, sir.

09:21AM  17          THE COURT:  Do you have any children?

09:21AM  18          THE DEFENDANT:  No, sir.

09:21AM  19          THE COURT:  What kind of hobbies do you have?  What

09:21AM  20  do you like to do?

09:21AM  21          THE DEFENDANT:  I'm an auto mechanic, both my hobby

09:21AM  22  and now currently by trade at my current job.  I had

09:21AM  23  commercial fish in the past and sport fish for hobbies.

09:21AM  24          THE COURT:  What kind of sport fishing do you do?

09:21AM  25          THE DEFENDANT:  Mostly pole fishing.

09:21AM 1          THE COURT:  Pole fishing.  What is that?

09:21AM 2          THE DEFENDANT:  Just with a fishing pole.

09:22AM 3          THE COURT:  What other kind of fishing can you do?

09:22AM 4          THE DEFENDANT:  Well, in -- primarily, the primary

09:22AM 5  fish in Alaska is salmon.

09:22AM 6          THE COURT:  Salmon?

09:22AM 7          THE DEFENDANT:  Yes, sir.  And usually we target the

09:22AM 8  red salmon and occasionally silvers, depending on what area.

09:22AM 9          THE COURT:  Ever hear of Bristol Bay?

09:22AM 10          THE DEFENDANT:  Yes, Your Honor.  I have many friends

09:22AM 11  who fish in Bristol Bay.

09:22AM 12          THE COURT:  What do they catch there?

09:22AM 13          THE DEFENDANT:  They catch the various types of

09:22AM 14  salmon, targeting the red salmon primarily, but there's some

09:22AM 15  by-catch as well with other special species of salmon.

09:22AM 16          THE COURT:  Is that salmon you catch like in

09:22AM 17  Lake Erie or Lake Ontario?

09:22AM 18          THE DEFENDANT:  There's a difference.  They're salt

09:22AM 19  water salmon and they spend most of their life at sea,

09:22AM 20  anywhere from a two to a five-year life span when they return.

09:22AM 21  Usually, the longer the life span of the fish and the further

09:22AM 22  they have to swim, the greater quality.  And fresh water

09:22AM 23  salmon is landlocked.  It's different quality of meat and a

09:22AM 24  different texture as well.

09:22AM 25          THE COURT:  Does he seem to know what he's talking

| | | |
|---|---|---|
| 09:22AM | 1 | about? |
| 09:22AM | 2 | MR. XIANG: He sent us some salmon, right? Or was |
| 09:23AM | 3 | it -- |
| 09:23AM | 4 | THE COURT: He sent some salmon to whom? |
| 09:23AM | 5 | MR. XIANG: To the undercover agent. |
| 09:23AM | 6 | THE COURT: What kind of salmon? |
| 09:23AM | 7 | MR. XIANG: We didn't eat it. |
| 09:23AM | 8 | THE COURT: All right. |
| 09:23AM | 9 | MS. COVERT: That was a waste. |
| 09:23AM | 10 | THE COURT: Are you seeing a doctor for any reason, |
| 09:23AM | 11 | sir? |
| 09:23AM | 12 | THE DEFENDANT: I have recently been seeing a doctor. |
| 09:23AM | 13 | My employment caused some issues in my health. I was working |
| 09:23AM | 14 | as a fueler for a fuel -- home heating fuel delivery company. |
| 09:23AM | 15 | And I did not know, at the time, that I had a blood allergen |
| 09:23AM | 16 | to petroleum. I had to go through a detox program due to high |
| 09:23AM | 17 | escalated levels of benzine in my blood and I had liver |
| 09:23AM | 18 | inflammation. I recently finished that detox program and my |
| 09:23AM | 19 | blood count is clean. |
| 09:23AM | 20 | THE COURT: Are you seeing a psychiatrist? |
| 09:23AM | 21 | THE DEFENDANT: No, sir. |
| 09:23AM | 22 | THE COURT: Have you ever been hospitalized or |
| 09:23AM | 23 | treated for narcotic addiction? |
| 09:23AM | 24 | THE DEFENDANT: No, sir. |
| 09:23AM | 25 | THE COURT: Are you today under the influence of any |

```
09:24AM    1    drug, medicine or alcohol?
09:24AM    2             THE DEFENDANT:  No, sir.
09:24AM    3             THE COURT:  Now, is anyone forcing you to plead
09:24AM    4    guilty?
09:24AM    5             THE DEFENDANT:  No, sir.
09:24AM    6             THE COURT:  Anyone threaten you in any way?
09:24AM    7             THE DEFENDANT:  No, sir.
09:24AM    8             THE COURT:  Your willingness to plead guilty, you
09:24AM    9    discussed with your attorney, she discussed it with the
09:24AM   10    government.  Based on those discussions, this plea agreement
09:24AM   11    was prepared and that's how this all came about?
09:24AM   12             THE DEFENDANT:  Yes, sir.
09:24AM   13             THE COURT:  Now, do you understand the offense which
09:24AM   14    you are pleading guilty to is a serious offense and if
09:24AM   15    accepted by the Court, there will be no appeal, as long as the
09:24AM   16    sentence is consistent with the terms and conditions of the
09:24AM   17    plea agreement?  Do you understand that?
09:24AM   18             THE DEFENDANT:  Yes, sir.
09:24AM   19             THE COURT:  Being found guilty of this offense may
09:24AM   20    deprive you of certain rights.  You may lose the right to hold
09:24AM   21    public office, right to serve on a jury, right to possess a
09:24AM   22    firearm, certain civil-service type jobs.  Do you understand
09:24AM   23    that?
09:24AM   24             THE DEFENDANT:  Yes, sir.
09:24AM   25             THE COURT:  Do you understand all the possible
```

09:24AM 1    consequences?  We talked about paragraph 1.  We talked about

09:24AM 2    the guidelines.  We talked about the possible fine, the cost,

09:24AM 3    the mandatory special assessment of $100.  Do you understand

09:24AM 4    all that?

09:24AM 5                THE DEFENDANT:  Yes, sir.

09:24AM 6                THE COURT:  Now, do you understand you have a right

09:25AM 7    to plead not guilty and you have a right to persist in that

09:25AM 8    plea of not guilty and you have a right to a fair trial in

09:25AM 9    this courtroom where a jury of 12 people will decide whether

09:25AM 10   you are guilty or not guilty?

09:25AM 11              First of all, I'd be the judge.  And to the best of

09:25AM 12   my ability, I would conduct a trial fairly and impartially.  I

09:25AM 13   have no interest in this case, other than to make sure that

09:25AM 14   you and the government get a fair trial.  In selecting that

09:25AM 15   jury, we would have in the courtroom somewhere around maybe 50

09:25AM 16   or 75 people; people who live in this area, live in this

09:25AM 17   district.

09:25AM 18              You'd be in the courtroom.  They'd be here.  Your

09:25AM 19   lawyer would be with you.  All those prospective jurors would

09:25AM 20   be put under oath to answer all my questions honestly and

09:25AM 21   truthfully.  If there were anyone in that group that would not

09:25AM 22   be fair and impartial, that person would be removed.  And

09:25AM 23   you'd have input on that through your lawyer and say, hey,

09:25AM 24   Judge, that guy's already made up his mind.  And if I agree

09:25AM 25   with you -- and there's no reason why I wouldn't if it made

09:25AM  1    sense -- that person would be gone.  Also, you could remove up

09:25AM  2    to 10 people for any reason you want, other than race or

09:25AM  3    gender.  You couldn't say well, I don't want any women on my

09:25AM  4    jury or I don't want a particular race of people.  You can't

09:26AM  5    discriminate in that sense.  Do you understand that?

09:26AM  6            THE DEFENDANT:  Yes, Your Honor.

09:26AM  7            THE COURT:  Ms. Covert would represent you.  You'd

09:26AM  8    have a right to hear and see all the witnesses and have her

09:26AM  9    cross-examine the witnesses.  And after the government's

09:26AM  10   rested its case, you could put on a defense.  You could

09:26AM  11   subpoena witnesses or any records that are relevant to the

09:26AM  12   trial issues.

09:26AM  13           But you don't have to do anything.  You're presumed

09:26AM  14   not guilty.  You don't have to prove a thing.  You can sit

09:26AM  15   there and say, you prove it government.  I'm going to rely on

09:26AM  16   the presumption of innocence, because you're presumed innocent

09:26AM  17   of the charges.  And the government has the burden of

09:26AM  18   convincing all 12 jurors that you are guilty beyond a

09:26AM  19   reasonable doubt before you can be found guilty.  Do you

09:26AM  20   understand that, sir?

09:26AM  21           THE DEFENDANT:  I understand this.

09:26AM  22           THE COURT:  By entering a plea of guilty, if accepted

09:26AM  23   by the Court, there will be no trial.  You'll have waived your

09:26AM  24   right to trial, as well as all the other rights we talked

09:26AM  25   about here.  Do you understand that?

09:26AM   1          THE DEFENDANT:  Yes, Your Honor.

09:26AM   2          THE COURT:  Any questions, sir?

09:26AM   3          THE DEFENDANT:  No, sir.

09:26AM   4          THE COURT:  Counsel, is there any reason why I should

09:26AM   5   not accept the plea?

09:26AM   6          MR. XIANG:  No, Your Honor.

09:26AM   7          MS. COVERT:  No, Your Honor.

09:26AM   8          THE COURT:  You're both satisfied I met all the

09:26AM   9   requirements of Rule 11?

09:26AM  10          MS. COVERT:  Yes, Your Honor.

09:26AM  11          THE COURT:  How do you plead to Count 3, sir; guilty

09:26AM  12   or not guilty?

09:26AM  13          THE DEFENDANT:  I plead guilty.

09:26AM  14          THE COURT:  It is the finding of the Court that the

         15   defendant is fully competent and capable of entering an

         16   informed plea.  His plea of guilty is a knowing and voluntary

         17   plea, supported by an independent basis of fact, containing

         18   each of the essential elements of the offense charged.  This

         19   plea is therefore accepted by the Court.  He is now judged

09:27AM  20   guilty of Count 3.

09:27AM  21          Sentencing will be scheduled for November 22nd at

09:27AM  22   1 o'clock.  A written pre-sentence report will be prepared by

09:27AM  23   the probation officer to assist the Court in imposing

09:27AM  24   sentence.  You'll be afforded an opportunity to meet with the

09:27AM  25   probation officer to provide information in that report.  Your

09:27AM 1 attorney should be present. You'll receive a copy of the

09:27AM 2 report, as well as your attorney. You'll be able to file any

09:27AM 3 additional information or any motions or objections that are

09:27AM 4 consistent with the terms and conditions of the plea agreement

09:27AM 5 and both you and your attorney will have an opportunity to

09:27AM 6 address the Court at the time of sentencing and say anything

09:27AM 7 you wish to say in mitigation of the sentence. The schedule

09:27AM 8 for filing all papers will be as follows.

09:27AM 9 THE CLERK: The initial presentence report shall be

09:27AM 10 due October 8th. Statements of the parties with respect to

09:28AM 11 sentencing factors, objections, if any, and motions, if any,

09:28AM 12 shall be due November 1st. Responses to objections or motions

09:28AM 13 shall be due November 8th. Sentencing memorandum or character

09:28AM 14 letters in support of the defendant shall be due November 8th.

09:28AM 15 Motion to adjourn sentencing shall be due November 12th. The

09:28AM 16 final presentence report shall be due November 15th and the

09:28AM 17 government's response to legal arguments in defendant's

09:28AM 18 sentencing memorandum shall be due November 15th.

09:28AM 19 THE COURT: Are you going to meet with the probation

09:28AM 20 officer today?

09:28AM 21 MS. COVERT: Today, Your Honor.

09:28AM 22 THE COURT: All right. If you have any problems, let

09:28AM 23 me know.

09:28AM 24 MS. COVERT: Thank you Judge.

09:28AM 25 THE COURT: Definitely should do it here. All right.

09:40AM   1   (Proceedings adjourned at 9:40 a.m.)

          2

          3

          4

          5

          6

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1              *    *    *    *    *    *    *

2

3          I certify that the foregoing is a

4     correct transcription of the proceedings

5     recorded by me in this matter.

6

7

8

9                         s/ Megan E. Pelka, RPR

10                        Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25